## STATE v. JACOBS.

1. The judge correctly charged that if defendant killed deceased in sudden heat and passion caused by a sufficient provocation, and not with premeditation or malice aforethought, the killing would be reduced to manslaughter, but that the law regarded no mere words, however insulting, as such sufficient provocation.

2. If the judge charged that no mere words, however irritating, can reduce the killing lower than manslaughter, he committed error of law, but an error of which the defendant could not complain.

3. The judge is not bound to instruct a jury in the precise terms in which a request is presented, even though it may contain a correct proposition of law; and in this case he properly so framed the instruction requested as to make it applicable to the several views of the testimony that the jury might take.

4. There is no error in refusing a charge when the instruction requested had been already given to the jury.

5. One who kills another cannot set up in his own defence a necessity so to do, when he had brought such necessity upon himself.

6. The admission of testimony in reply is within the discretion of the Circuit Judge. And where a part of a conversation was brought out by a witness for the defence, the judge properly permitted the whole conversation to be proved in reply.

7. A witness for plaintiff was asked on cross-examination if she had made a certain statement to a third person, and she said she had not. Such person was produced by defendant and proved the statement. *Held*, that it would not have been proper for plaintiff's witness when first on the stand to have been interrogated by plaintiff as to such conversation (not then in evidence), but that she was properly examined about it in the reply.

Before FRASER, J., Greenville, April, 1887.

The defendant was indicted for murder and convicted of man-

slaughter, and he appealed to this court.   The opinion states the case.

*Messrs. A. Blythe* and *W. C. Benet*, for appellant.

*Mr. Orr*, solicitor, contra.

February 1, 1888.   The opinion of the court was delivered by

MR. JUSTICE MCIVER.   Under  an indictment for murder the defendant was convicted of manslaughter, and from the judgment entered on such verdict appeals upon the grounds hereinafter set out.

It seems from the testimony  that the deceased, John Hughes, was the tenant of the defendant, and that on the  day  when  the homicide was committed the defendant went to  the  house of the deceased for the purpose, as  he  claimed,  of  remonstrating with him about  burning  his  rails.   There was some conflict of testimony as  to  what  passed  between  the  parties at this first visit, though there seems to be no  doubt  that when the defendant was going off  the  deceased  used  very abusive language towards  the defendant, provoked, as it was alleged on the one side and denied by the other, by threats made by  defendant that he would  shoot any one who burned his rails, and that he was going home to get his gun for the  purpose.   Soon after, the defendant was seen returning in the direction of  the  house of deceased, armed with a  gun,  when  the  deceased  and  his wife went out to meet him ; and when the parties came together,  or  within a few feet of each other the fatal shot was  fired  by  the  defendant.   There was a conflict of testimony as to what  occurred  immediately preceding the firing of the gun,  especially  as  to whether deceased had  a knife in his hand, and  made any demonstration of violence toward the defendant.

While Mrs. Hughes, the wife of the deceased, was on the stand as a witness for the State, she  was  asked,  on  the  cross-examination, if she had  not  made a certain  statement to her brother,  in the presence of one Lewis Smith, to the effect that after her husband was shot she found his knife at the  place  and  brought  it home, saying the case was  bad enough anyhow, and that she did

not want them to find the knife, to which she replied that she had made no such statement—that her husband had no knife. After the testimony on the part of the defence was closed, Mrs. Hughes was recalled by the solicitor, and when he was proceeding to inform her what Lewis Smith, when examined for the defence, had stated as to the conversation between her and her brother, counsel for defendant objected upon the ground that her testimony was cumulative and not competent in reply. The court ruled that "the State has a right to put her back to state what was said;" to which ruling exception was duly taken.

Counsel for defence submitted numerous requests to charge, but as only two of them—the third and twelfth—are made the basis of exception, the others need not be noticed. The exceptions or grounds of appeal are as follows:

I. Because his honor, the presiding judge, erred in refusing to charge as requested by the defendant: "That if the jury believe from the testimony that Jacobs killed Hughes in an affray, under sudden heat and passion, superinduced by sufficient provocation, and not from a premeditated and formed design, then the killing is not murder, but manslaughter, unless the testimony reduces it to that of self-defence."

II. Because his honor erred in refusing to charge the jury as requested by the defendant: "That as matter of law the prisoner, in a case of homicide in self-defence, must not have begun the conflict, and brought upon himself the necessity which he sets up as a defence. If such be the case, he should have endeavored to avoid the conflict. But if it should appear from the circumstances, to the satisfaction of the jury, that the prisoner had no possible, or at least probable, means of escaping the assailant, without danger to his life or great bodily harm, then he may instantly kill his assailant without having endeavored to avoid the conflict."

III. Because, the defence having laid the foundation to contradict the State witness, Mrs. Sarah Hughes, the wife of the deceased, in her cross-examination, with reference to a conversation of hers, in the hearing of one Lewis Smith, and she having denied that she had any such conversation, and the said Lewis Smith having testified for the defence that such conversation did

take place, the Circuit Judge erred in allowing the said Mrs. Hughes, when recalled in reply, to repeat her denial of said conversation, the defendant having objected.

IV. Because, the defence having laid the foundation to contradict the State's witness, Mrs. Sarah Hughes, the wife of the deceased, in her cross-examination, with reference to a conversation of hers in the hearing of one Lewis Smith, and she having denied that she had any such conversation, and the said Lewis Smith having testified for the defence that such conversation did take place, the Circuit Judge erred in ruling, when the said Mrs. Hughes was recalled in reply and examined by the solicitor as to said conversation, that "the State had a right to put her back to state what was said," the defendant having objected.

From the charge of the judge, as incorporated in the "Case," it would seem that after laying down the general principles applicable to the law of homicide in terms to which no exception has been taken, he then took up each request to charge separately, and either allowed, refused, or modified it; and when he came to the third request, which constitutes the basis of the first ground of appeal, he said : "Now, the third I find it necessary to modify somewhat, perhaps a good deal. The defendant, Jacobs, had a right to go about his own premises with his gun, if for any peaceable purpose, or in self-defence, or for any other purpose; and if the jury believe that Jacobs killed Hughes in sudden heat and passion, and not with any premeditation, and not with malice aforethought, then the killing would be reduced to manslaughter. The killing must have been done not in pursuance of any previous purpose or design, formed before the affray, and if done in pursuance of a sufficient provocation, it must still be done in the heat of blood and before there has been sufficient time for the passion to cool. It is therefore important for the jury to consider whether the killing was done in consequence of what had occurred when defendant was first at Hughes's house, or in consequence of some provocation which occurred when he came last at the time of the killing. In either case it is for the jury to determine if there was sufficient cooling time for the defendant to consider and act deliberately. No mere words, however insulting, can excuse a killing and reduce the offence to manslaugh-

ter.  It is therefore important for the jury to consider whether the killing was done on premeditation, which was formed when the defendant was first at Hughes's house, or if it was done suddenly and on the heat of passion, and no mere words, however irritating, can reduce the killing lower than manslaughter."

We must confess that it is very difficult, if not impossible, to discover anything in this language to which the accused could properly take exception.  Indeed, as it appears in the "Case" (and we have made an exact copy of what there appears), it is much more favorable to the appellant than the law would warrant, especially in the latter part of it, which, in justice to the Circuit Judge, we assume to be a misprint.  After having previously laid down the law correctly, that no words, however insulting, would constitute a sufficient legal provocation to reduce a killing to manslaughter, he could scarcely have said, as he is represented to have said in the latter part of the above quotation : "No mere words, however irritating, can reduce the killing *lower than* manslaughter," for that would imply that insulting words merely would be a sufficient provocation to reduce the killing as low as manslaughter, which would be entirely inconsistent with his previous correct instruction to the jury.  But even if we could conceive it possible that the Circuit Judge did use the language as it is printed in the "Case," this certainly would not be an error of which the appellant could take advantage, as it would be an error altogether in his favor.

The complaint, however, which the appellant makes of this modification of his third request to charge, seems to be of a twofold character ; *first,* because the attention of the jury was thereby diverted from the precise proposition as presented in the request, and directed to another inquiry, viz., whether the killing was done in consequence of what occurred when the defendant went first to the house of the deceased, or in consequence of some provocation which occurred on the second visit, when the homicide was committed ; *second,* because in the modification made by the Circuit Judge he omitted any reference to the latter part of the request—"unless the testimony reduces it to self-defence."

As to the first ground of complaint, it is clear that it is not

well founded. As has often been ruled, a Circuit Judge is not bound to instruct a jury in the precise terms in which a request is presented, even though it may contain a correct proposition of law. On the contrary, it is not only his right, but his duty, so to frame his instructions as to present the law applicable to the several views of the testimony which the jury may take; and this is what we understand the judge to have done in this case. The particular proposition as presented in this request was undoubtedly correct, as far as it went; but inasmuch as there was a conflict of testimony as to what occurred on the first as well as on the last visit, the Circuit Judge could not know whether the jury would consider the provocation alleged to have been given on the first visit, or that received on the last visit, as the moving cause of the act of killing, and inasmuch as there was no pretence that any provocation, other than by mere words, was given on the first visit, and there was a conflict of testimony as to whether the provocation given on the second visit was by word or act, it was eminently proper that the instruction asked for should be so framed and its language so modified as to make it applicable to either view of the testimony which the jury might take. It was certainly necessary that the jury should be made to understand that to reduce the killing from murder to manslaughter, it must not only have been done under sudden heat and passion, but also upon sufficient provocation, and it was equally necessary that the jury should understand that mere words would not in law constitute sufficient provocation.

As to the second ground of complaint, it appears from the "Case" that the Circuit Judge, after using the language above quoted, read the third request to the jury, adding the word "changed," which could only mean that the request was changed in the manner indicated by the language which he had just used, and as no reference was there made to the concluding words of the request—"unless the testimony reduces it to self-defence"—the only inference which the jury could draw was that those words were *not* changed. And when we see that, in the general charge, the jury had been fully and correctly instructed as to what would constitute a killing in self-defence, in which very nearly the same words had been used, the omission of which is

complained of, we think it clear that there is no ground for the second allegation of error in refusing the third request.

As to the second ground of appeal, based upon a refusal to charge the twelfth request, an examination of the record discloses the fact that this request is not correctly set out in this ground of appeal. As it appears in the "Case" it reads as follows: "As matter of law, the prisoner, in a case of homicide in self-defence, must not have begun the conflict, and brought upon himself the necessity which he sets up as a defence. If such be the case, he should have endeavored to avoid the conflict. But if it should appear from the circumstances to the satisfaction of the jury that the prisoner had no other possible, or at least probable, means of escaping the assailant without danger to his life or great bodily harm, then he may instantly kill his assailant, if he had in good faith endeavored to avoid the conflict after he had begun it." Then it appears that the Circuit Judge, after reading this request as it has just been quoted, said: "So far I think it is correct," and this would be sufficient to dispose of this second ground of appeal, for it would seem that the twelfth request *was* charged in the identical words in which it appears in the "Case," to which alone we are authorized to look in order to ascertain what occurred in the court below.

It is true that the twelfth request, *as set out in the second ground of appeal,* was not charged in the language there used, which ordinarily would not be regarded, as the well settled rule is that any statements in the exceptions or grounds of appeal different from, or additional to, those found in the "Case" cannot be considered; yet as the language which the Circuit Judge is represented in the "Case" as using in reference to this request, would seem to indicate that the twelfth request did contain some other language than that found in the "Case," we will proceed to consider the propriety of the twelfth request as it is set out in the second ground of appeal. For it seems that the Circuit Judge, after reading the twelfth request to the jury, as it is set out in the "Case," said, "So far I think it is correct," and then added these words: "But if it should appear to the satisfaction of the jury that the prisoner had no other way of making his escape, &c., I cannot charge you that that is law. If a man

draws a pistol upon another to kill him, he has no right to say, 'I killed him because he had a pistol drawn upon me.' His only way to avoid a difficulty was to retreat from having a conflict with him, then he would not be responsible; but if he stands there and shoots him down just because he draws a pistol on him *or* (in) his own defence, he has no right to take his life for that." This, as we have said, would seem to indicate that there was something more in the twelfth request than what appears in the "Case," and therefore we will not decline to consider that request as it is set out in the second ground of appeal.

It is argued here that the Circuit Judge misconceived the purpose and scope of this request in assuming that its object was confined to a statement of the law applicable to a case in which the prisoner had commenced or brought on the conflict, whereas, properly construed, its purpose was to present the law in two distinct and different cases—one in which the prisoner commenced the conflict, and the other in which he did not commence the affray, but was assailed by his adversary. It does not appear to us that such was the proper construction of the request. On the contrary, the most natural construction is that adopted by the Circuit Judge, viz., that while, as a general rule, one who has committed a homicide in a conflict which he has himself commenced, cannot claim to have acted in self-defence, yet if his adversary presses him so closely that he cannot escape without danger of his life or great bodily harm, then he may instantly kill his assailant without having endeavored to avoid the conflict; and so construed we do not think the request could have been allowed—the rule, as we understand it, being, in the language of that eminent author, Mr. Bishop, "One must not have brought upon himself the necessity which he sets up in his own defence;" and this rule has been recently affirmed in *State* v. *Beckham*, 24 *S. C.*, 283.

But even if the request could be construed as contended for by appellant, there was no error in refusing to charge the latter part of the request; for the proposition which it is now argued that part of the request was designed to present, had been already explicitly laid down to the jury, and there was no error in declining to repeat it.

The third and fourth grounds of appeal, resting upon the same principles, were considered together in the argument and will be so considered here.   It will be observed that the testimony here objected to was merely cumulative at most; in fact, a mere repetition of what had been brought out in chief.   No new or additional fact was adduced, and hence the reason of the rule in regard to testimony in reply would not be applicable, and it is therefore settled that the admission of cumulative evidence in reply is within the discretion of the Circuit Judge.   *State* v. *Sims*, 16 *S. C.*, 495; citing 2 *Phil. Evid.*, 912.   But in addition to this, the ruling of the Circuit Judge was clearly correct upon another ground.   Lewis Smith having been adduced to prove that he heard Mrs. Hughes, in a conversation with her brother, make a certain specified statement, it was clearly competent to prove in reply the conversation in which such statement was made, upon the well settled principle that where a part of a conversation has been offered in evidence, the whole of it may be proved in reply; and this is precisely what we understand the ruling of the Circuit Judge to have been.

It is contended, however, that it was the duty of the solicitor, on the redirect examination, to have examined Mrs. Hughes as to her conversation with her brother, after she had been asked in the cross-examination whether she had not made a certain statement in that conversation, in the presence of Lewis Smith, and should not have deferred such examination for the reply.   It seems to us that such a course would have been much more objectionable than the one pursued.   Until Lewis Smith was examined for the defence, it did not appear that Mrs. Hughes had had any conversation with her brother, and even if it had so appeared, it would have been clearly incompetent for the solicitor, at that stage of the case, to have asked his own witness to repeat any conversation which she may have had with her brother or any other third person, after the homicide had been committed.   But after Lewis Smith had, in his testimony for the defence, said that he heard Mrs. Hughes, in a conversation with her brother, make a certain statement, it then became just as clearly competent to ask her in reply to repeat the whole of that conversation.   Indeed, we are not prepared to say that it would have

been any violation of the rules of evidence to have asked Mrs. Hughes in reply if, after hearing the testimony of Smith,· she still persisted in denying that she had made the statement attributed to her. Such a course might be unnecessary and even objectionable on the ground of a needless waste of time, but we do not see what rule of evidence would be thereby violated if the Circuit Judge, in the exercise of his discretion, saw fit to permit it.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.