96    209
117   374

## MOORE *v.* STATE.

*(Nashville.* February 13, 1896.)

1. CRIMINAL PRACTICE. *Record recital of officer's oath.*

The recital in the order respiting the jury in a felony case, that the officers placed in charge "were sworn according to law to attend and wait on them" is sufficient. (*Post, p. 212.*)

Cases cited and approved: Taylor *v.* State, 6 Lea, 235; Lancaster *v.* State, 91 Tenn., 286.

2. CRIMINAL EVIDENCE. *Physician's experiments admissible.*

It is competent for physicians who saw deceased lying on the ground at the place where the homicide occurred, and who located the pistol balls fired into the body, to testify with regard to an experiment subsequently made in the absence of defendant, in order to ascertain, if possible, the relative positions of the deceased and defendant when the fatal shot was fired. (*Post, pp. 212, 213.*)

Cases cited and approved: Byers *v.* Railroad, 94 Tenn., 346; Boyd *v.* State, 14 Lea, 161; Lipes *v.* State, 15 Lea, 125; Railroad *v.* Ayers, 16 Lea. 725.

3. SAME. *General objection ineffectual.*

A general objection to the introduction of evidence is not available, if the evidence was competent upon any ground. (*Post, pp. 213, 214.*)

Cases cited and approved: Reilley *v.* English, 9 Lea, 20; Miller *v.* State, 12 Lea, 223.

4. SAME. *Dying declaration admissible, when.*

A dying declaration, otherwise competent, will not be excluded because it was made five days before death. (*Post, pp. 213–215.*)

Cases cited and approved: Epperson *v.* State, 5 Lea, 291; Baxter *v.* State, 15 Lea, 657; Lowry *v.* State, 12 Lea, 142; Stewart *v.* State, 2 Lea, 598.

14—12 P

5. SAME.  *Same.*

An objection to a paper as a dying declaration upon the ground
that it was signed in the name of deceased by another, cannot
be raised for the first time on appeal, especially where the wit-
ness who identified the paper and read it to the jury, was the
party who wrote it at the dictation of deceased, and affixed
the signature in question.  (*Post, pp. 213-215.*)

6. SAME.  *Statements of deceased made in defendant's presence ad-
missible, when.*

Statements by deceased, made soon after and with regard to the
affray, are admissible against defendant in a murder case,
where they were made within his hearing, and were not con-
tradicted by him, and were of such a nature that his silence
affords an inference of his assent.  (*Post, p. 215.*)

7. SAME.  *Impeachment of witness by record showing infamy.*

An authenticated copy of the record containing a judgment de-
claring a witness infamous, and disqualifying him from giving
evidence, is admissible to impeach him.  (*Post, pp. 215, 216.*)

Case cited and approved: Boyd v. State, 94 Tenn., 505.

8. SAME.  *Order of introduction of evidence rests in Court's discretion.*

It is within the sound discretion of the trial Court, whether it
will permit the prosecution to introduce testimony in rebuttal
which should more properly have been introduced in the open-
ing.  (*Post, pp. 216, 217.*).

9. SAME.  *Charge as to effect of proof of good character.*

An instruction that if the defendant, in a prosecution for murder,
is shown to have been a man of good character previous to the
homicide, it is a witness in his behalf, is proper, where the tes-
timony as to his good character related to his reputation as a
peaceable man, and was introduced to support his plea of self-
defense, and the jury are further properly instructed as to the
effect of reputation upon his credibility as a witness.  (*Post,
pp. 218, 219.*)

10. SAME.  *Swearing of witness waived.*

The failure to swear a witness for the State is waived where the
counsel for defendant, with knowledge of the failure, cross-
examines him as one fully qualified to testify, although de-
fendant himself did not know of the omission.  (*Post, pp. 219, 220.*)

Case cited: 100 Mo., 347.

Moore v. State.

11. NEW TRIAL. *Discretion of Court as to granting.*

The denial of a motion for a new trial in a criminal case on the ground of newly-discovered evidence, will not be disturbed on appeal, unless there has been an abuse of discretion by the trial Judge. (*Post, pp. 219–223.*)

Case cited and approved: State v. Collins, 15 Lea, 434.

12. SAME. *Examination of witnesses in open Court proper.*

It is proper for the Court, upon a motion for a new trial in a criminal case, on the ground of newly-discovered evidence, to require the presence of affiant in open Court, in order to test his knowledge and his credibility by an oral examination. (*Post, p. 222.*)

Case cited and approved: Glidewell v. State, 15 Lea, 133.

13. SAME. *Counter affidavits admissible.*

The affidavits on a motion for a new trial in a criminal case, on the ground of newly-discovered evidence, may be opposed by counter affidavits. (*Post, pp. 222, 223.*)

Cases cited and approved: McGavock v. Brown, 4 Hum., 250; 24 Pick., 246; 2 Caine, 260; 10 Wend., 288.

14. SELF-DEFENSE. *Charge of Court.*

An instruction that, to constitute self-defense, the belief or apprehension of danger, must be founded on sufficient circumstances to authorize the opinion that the *deadly purpose* then exists is not prejudicially erroneous, because it omits reference to *fear of great bodily harm*, where in three other places such a fear is stated to be a justification for killing in self-defense. (*Post, p. 217.*)

---

FROM RUTHERFORD.

---

Appeal in error from Circuit Court of Rutherford County. M. D. SMALLMAN, J.

PALMER & RIDLEY, McLEMORE & RICHARDSON, and J. H. CUMMINGS for Moore.

Attorney-general PICKLE, SHEAFE & WHITAKER, G. F. CRANOR, P. P. MASON, B. L. RIDLEY, and JNO. S. PATTERSON for State.

BEARD, J.  The plaintiff in error was tried and found guilty of the murder (in the second degree) of one Pemberton, and he has brought his case to this Court for review.  A number of errors of law are assigned by his counsel to the action of the Court below.  These will be considered in the order in which they were presented in argument and brief.

1. It is insisted that the record fails to show that the officers placed in charge of the jury, during the trial of this cause, were properly sworn. We think this objection is not well taken.  The minute entry on this subject is as follows: "Upon the respite of the jury it was placed in the charge of W. H. Alexander and J. W. Primm, two deputy sheriffs," etc., "who were sworn according to law to attend and wait on them."  It is only necessary to say that similar recitals have been heretofore considered by this Court in *Taylor* v. *State*, 6 Lea, 235, and *Lancaster* v. *State*, 91 Tenn., 286, and were held to be sufficient.

2. It is urged that the trial Judge committed a reversible error in permitting Drs. Frees and Martin to testify with regard to an experiment which they made a few days before the trial, in order to as-

certain, if possible, the relative positions of the deceased and the prisoner at the time the fatal shot was fired. These two witnesses were surgeons and physicians. They were called to see the deceased a very short time after the difficulty, and found him lying on the ground at the place where it occurred. They probed the wounds and traced the course and located the two pistol balls which were fired into his body by the prisoner. These facts, added to their knowledge of the general conditions under which the affray took place, made their testimony, as to this experiment, competent to go to the jury. The objection that the experiment was made in the absence of and without notice to plaintiff in error, went to the weight of this evidence and not its admissibility. *Byers* v. *Railroad*, 94 Tenn., 346; *Boyd* v. *State*, 14 Lea, 161; *Lipes* v. *State*, 15 Lea, 125; *Railroad* v. *Ayers*, 16 Lea, 725.

3. Again, it is contended that the trial Judge erred in admitting the paper prepared by one Saunders, soon after the difficulty, as the dying declaration of Pemberton. The objection to the introduction of this paper in the Court below was general in its character. We repeat what has been heretofore said by this Court, that it is doubtful "whether a general objection would, in any case, be sufficient to put the Court below in error." *Reilly* v. *English*, 9 Lea, 20. "Upon principle, it is the duty of a party objecting to evidence to communicate, at the time, to the Court and the opposite

party, the grounds of his objection, for the obvious reason that they should have the opportunity of acting advisedly, and not be entrapped into error." *Miller* v. *State*, 12 Lea, 223. Certainly the general objection will not avail here if, upon any ground, the evidence objected to was competent. In argument it is now' urged that the record fails to disclose that Pemberton made this statement under a sense of impending death. We think otherwise. He was suffering at the time from two wounds recently inflicted, one of which proved fatal. That he was sensible of the seriousness of this wound and that death would result therefrom, is apparent from his conversation with a number of persons. To the party who reduced the statement to writing he said, both before and at the time of its preparation, that he was going to die. To the minister who came to him he expressed "a deep sense of his impending dissolution and a consciousness of the awful occasion." Nor is the competency of this paper, as a dying declaration, affected by the fact that death did not ensue for five days after it was made. Wharton on Crim. Ev., Secs. 281, 295; 5 Lea, 291; 15 Lea, 657; 12 Lea, 142; 2 Lea, 598. But it is also urged in argument that this paper should not have gone to the jury, because it was signed "J. D. Pemberton by J. T. Saunders." This objection, being made for the 'first time in this Court, comes too late. Especially is this so, as the witness, Saunders, who identified the paper and read it to

the jury, was the party who wrote it at the dictation of Pemberton as his dying declaration, and then affixed the signature in question. In addition, there is nothing in the record to rebut the presumption that this signature was made by Saunders for Pemberton on account of the latter's enfeebled condition.

4. The trial Judge permitted certain statements of the deceased, made soon after the affray and with regard to it, to be put in evidence, and this is assigned as error. The witnesses who testified as to these statements said they were made in the presence of and within the hearing of the prisoner, and that they were uncontradicted by him. We think the testimony was competent. "If A, when in B's presence and hearing, makes statements which B listens to in silence, interposing no objection, A's statement may be put in evidence against B whenever B's silence is of such a nature as to lead to the inference of assent." Wharton on Crim. Ev., Sec. 679.

5. One Robinson was examined as a witness by plaintiff in error. On cross-examination the attorney for the State asked him if he had not been indicted in the Circuit Court of Coffee County for larceny and robbery, and he answered he had been. Thereupon the State offered an authenticated copy of the record in the case, complete in every respect, and containing the judgment declaring him infamous and disqualifying him from giving evidence in the Courts

of the State. This was admitted over the objection of plaintiff in error. This was proper. The conviction of this witness could only be shown by the record. *Boyd* v. *State*, 94 Tenn., 505.

6. After the defendant below had closed his case, the State, over the objection of the former's counsel, was permitted to show by one witness that he assisted in undressing Pemberton when he was shot, and saw no weapon of any kind on or about his person; and by another, that he examined the hands of the deceased immediately after the shooting occurred and found no blood on them. It is now insisted this testimony should have been offered in chief, and that the trial Judge was in error in permitting it to be given in rebuttal. The contention of plaintiff in error was, that his first shot was fired as a result of a demonstration made by the deceased in passing his hand to his hip pocket, as if to draw a pistol, and his second, when deceased was in the act of throwing a large stone, upon which his hand, made red by the flow of blood from his first wound, had left its impression. This testimony, of which complaint is now made, was clearly competent to rebut these contentions. But, in addition, while orderly procedure would suggest that the State should put its whole case in evidence in chief and reserve only its rebuttal testimony to meet the case of the prisoner, yet there is no fixed or inflexible rule which would require the trial Judge to reject testimony in rebuttal which more properly should have been pre-

sented in the opening of the case.    This is a matter resting in the sound discretion of the Court below, and unless the case should disclose an abuse of that discretion, it would not be interfered with by this Court.

7. The trial Judge, among other things, said to the jury: "To constitute self-defense, the belief or apprehension of danger must be founded on sufficient circumstances to authorize the opinion that the deadly purpose then exists, and the fear that it will be at that time exercised." It is insisted there was error in this instruction, as its necessary effect was to exclude the plaintiff in error from the right of self-defense, even though he might have had, at the time he fired, a well-founded apprehension that he was exposed to great bodily harm at the hands of the deceased.    It was an evident inadvertence on the part of the trial Judge in dropping, at this place in his charge, a fear of, or apprehension of, great bodily harm as one of the constituents of the right of self-defense.    But immediately following the above he says: "To excuse a homicide, the danger of death or great bodily injury must either be real or honestly believed to be so," etc.    This is repeated distinctly, and with emphasis, in two other places, in close connection with the foregoing, so that it is very clear this inadvertence could not have misled the jury to the prejudice of the prisoner.    The assignment, therefore, is not well taken.

8. It is further assigned for error that the trial

Judge had failed in his charge to give, as clearly as he should have done, the prisoner the benefit of reasonable doubt. This criticism is directed to one sentence of a charge (which, of itself, is not amenable to it) remarkable for its clearness and fullness of statement of all the rules that govern in a case of this kind, especially on the doctrine of reasonable doubt. This assignment is therefore overruled.

9. The trial Judge instructed the jury that "if the proof shows plaintiff in error to have been a man of good character previous to the difficulty, this is a witness in his behalf," etc., and it is now assigned for error that this limits the effect of good character to the time of the difficulty, while the law gives him the benefit of it as a witness in his behalf until it is impeached on the trial. The prisoner was resting his case upon the plea of self-defense, and had testified that he had only fired his pistol when he believed himself to be in danger of death or great bodily harm. To support this defense, he introduced a great number of witnesses, who testified that he was a man of peace, whose life had been characterized by quiet and subordination to the law. It was to this phase of his character the Court below directed this part of the charge, and it was proper to limit his good character in that respect to the date of the fatal difficulty. For, while evidence is admissible to show that the previous good character of the accused was such as to make it improbable that the accused would be guilty of the

crime charged (*People* v. *Dogett*, 62 Cal., 27; *Kee* v. *State*, 28 Ark., 155; *Young* v. *Com.*, 6 Bush., 312), yet testimony that he has borne a good character subsequent to the commission of the offense is not competent. *Brown* v. *State*, 46 Ala., 175; *State* v. *Kinley*, 43 Iowa, 294.

And that the jury in this case could not have been misled by the limitation put upon the character of the prisoner in this regard, is apparent in other parts of his charge, where the trial Judge lays down with much clearness the rules that are to govern the jury in testing the credit of the witnesses, and then gives him the full benefit of the supporting evidence he had introduced to support his character as a witness.

10. It is contended, in the last place, that the Court below committed error in declining to grant the motion for a new trial. This motion was rested on two grounds: First, that one of the witnesses for the State testified without being sworn, and that this fact had only become known to the plaintiff in error after the trial; and, second, that since the trial new and important testimony had come to the knowledge of the prisoner and his counsel. As to the first of these grounds, it is to be observed, while there is an affidavit of the prisoner, stating that he only became aware of the fact that this witness gave his testimony without being sworn, after the trial was concluded, yet the record is silent as to when his counsel discovered it. That

there was irregularity in thus accepting this testimony is true, but it was one that would easily and promptly have been remedied by the Court if attention had been called to it during the trial. The record discloses that, after the examination in chief by the State, he was turned over to the attorneys of the plaintiff in error, who cross-examined him as one fully qualified to testify. Having thus gone forward without inquiry or objection, it must now be taken that there was an implied waiver of the oath of the witness, which is conclusive on the prisoner as well as the State. *State of Missouri* v. *Hope*, 100 Mo., 347.

To understand the second of the grounds on which this motion rests, it is necessary briefly to state a few of the facts which are undisputed and the contention of the plaintiff in error as to others which are the subject of controversy. The deceased, on the morning of the difficulty, was driving a wagon loaded with wheat towards Murfreesboro, seated upon the front part of his vehicle. The prisoner was in his buggy, going in the opposite direction. When they met each halted his team and there was at once renewed an old quarrel of an exasperating character. An angry colloquy ensued, during which each party maintained his position in his own conveyance. Finally, according to the testimony of the plaintiff in error, the deceased, denouncing the prisoner, said to him that he (the deceased) intended to kill him, and accompanied this threat with a movement of his

hand to his hip pocket as if to draw a pistol. Then it was plaintiff in error, believing himself in imminent peril, drew his weapon, firing one shot at deceased while he sat in his wagon and the other after he got down to the ground. In the course of the trial, to rebut the inference from these statements that deceased was armed, the State offered testimony tending to show that, when undressed, soon after the affray, no weapon was found upon him. Soon after the difficulty occurred the wagon of the deceased was driven to the premises of a neighbor, and was left there. On motion for a new trial, the affidavit of one Hopkins was offered, to the effect that, soon after the wagon was placed on these premises he went, in company with his brother, to examine it, and, while engaged in the examination, he discovered a satchel on the top of the sacks of wheat, which his curiosity induced him to open, and, doing this, he found a pistol inside, carefully wrapped with paper. He further stated he immediately reclosed the satchel, and, rejoining his brother, accompanied him to their father's house, keeping from him and all other persons the fact of this discovery until the day after the trial, when, for the first time, he disclosed his secret to the prisoner, who sought an interview with him at his (the affiant's) father's place. The affidavits of three or four persons were offered corroborating Hopkins in unimportant particulars, and the affidavits of a number of persons in support of his character for truth were

also filed, while, on the other hand, the State presented several counter affidavits, the tendency of which was to throw serious discredit on all the material facts of his statement. The trial Judge had Hopkins and others of these parties come before him and submit to an examination in open Court, and, either regarding Hopkins' statement as untrue, or, if true, as immaterial in view of the clear and distinct statement of the prisoner as to the gesture of Pemberton which induced him to fire, declined to grant a new trial. This motion, resting on the ground of newly discovered evidence, was addressed to the discretion of the trial Judge (*State* v. *Collins*, 15 Lea, 434) and his conclusion is binding on this Court, unless we discover that there has been an abuse of that discretion. This we do not find.

But it is insisted the Court below violated correct practice, and did serious wrong to the prisoner, in requiring Hopkins, the affiant, to be present in Court to submit to an examination at the hands of the State's representatives, and also in permitting the State to offer counter affidavits to contradict and thus impeach him. It was not only not a violation of, but altogether sound, practice to require, on this motion, the presence of affiant in open Court in order to test his knowledge and his credibility by an oral examination of him with regard to the statements contained in his affidavit. *Glidewell* v. *State*, 15 Lea, 133.

Nor was any error committed in allowing the pro-

duction of counter affidavits. This practice was rec-
ognized as well established as early as the case of
*McGavock* v. *Brown*, 4 Hum., 250, where it was
said: "In criminal cases it has been the constant
practice to receive counter affidavits, and new trials
are every day refused upon the facts disclosed in
such affidavits." And: "This practice has prevailed
and been found to be useful in other States." *Parker*
v. *Hardy*, 24 Pick., 246; *Pomroy* v. *Columbian Ins.
Co.*, 2 Caine's R., 260; *People* v. *Sup. Ct. of N. Y.*,
10 Wend., 288.

Nor can the party tendering the witness reason-
ably complain of this procedure, for he should be
prepared to repel any collateral attack on the char-
acter of the witness upon whose testimony his motion
rests. As there is great temptation to perjury in
such applications, the trial Judge should avail him-
self of the law's best methods for sifting the con-
sciences and character of such a witness, in order
that a conclusion may be reached which will promote
rather than defeat the ends of justice.

This last assignment of error is also overruled,
and the judgment of the Circuit Court is affirmed.