REESE ROBERTS, defendant below, plaintiff in error, *vs.* STATE OF DELAWARE, plaintiff below, defendant in error.

1.  WITNESSES—CONTRADICTORY STATEMENTS—ACCUSED AS WITNESS.

Where accused is a witness, the grounds ordinarily necessary for contradiction by prior statements need not be laid, the statements being received in the nature of admissions and when material, they are admissible, whether the party appears as a witness or not.

2. CRIMINAL LAW—EVIDENCE—ADMISSIONS—CONTRADICTION.

Where the admission of accused that he told another that he was without money was in evidence, the state might, if such evidence was material, show the falsity of the statement.

3. CRIMINAL LAW—EVIDENCE—ORDER OF PROOF—REBUTTAL.

Where, in a murder trial, defendant on cross examination gave evidence tending to relieve him of the incriminating circumstances of the possession of a large amount of money, and to that extent tended to prove that he was not at deceased's house on the night of the crime, the falsity of his statement might be shown in rebuttal, though such rebuttal evidence further tended to strengthen the case first set up by the state in chief.

4. CRIMINAL LAW—EVIDENCE—REBUTTAL—DISCRETION OF COURT.

It is in the discretion of the court to admit evidence in reply which should properly have been given in chief.

5. CRIMINAL LAW—TRIAL—CONTRADICTION OF TESTIMONY—MATERIALITY.

Where there was evidence that a wallet belonging to deceased, in which he usually kept his money, was missing, that a lock of his safe had been knocked off, that a check was found on the floor by the safe, and that footprints made by shoes belonging to accused led toward deceased's house from a cherry tree, from which a limb used in the killing was broken, testimony of accused on cross examination that he had stated after the murder he had no money was material, and the state was properly allowed to show by a witness, in contradiction, that after the murder accused had a considerable amount of money in his possession.

(*March* 23, 1911.)

CURTIS, Chancellor, and WOOLLEY and RICE, Associate Judges, sitting.

*J. Frank Ball* for plaintiff in error.

*Andrew C. Gray*, Attorney General, and *Josiah O. Wolcott*, Deputy Attorney General, for defendant in error.

Supreme Court, January Term, 1911.

ERROR to Court of Oyer and Terminer, for New Castle County, (No. 9, January Term, 1911). Reese Roberts was indicted (No. 96, September Term, 1910) for murder of the first degree. Convicted (*ante*, 140) and brings error. Affirmed.

WOOLLEY, J., delivering the opinion of the court:

Reese Roberts, the plaintiff in error, was charged by the indictment with the murder of Robert Casey, Jr., and upon trial by the Court of Oyer and Terminer, sitting in New Castle County, in October, 1910, was found guilty of murder in the first degree. After his conviction, he obtained from this court a writ of error, in support of which he has made one specification of error, whereby he claims that in the proceedings and judgment below

the court committed error in admitting certain evidence in rebutal.

The evidence upon which the prisoner's guilt was determined was wholly circumstantial, and only so much thereof as has relation to the matter in review will be here considered. From this evidence it appears that on Saturday morning, August 20th, 1910, Robert Casey was found dead in bed, with his skull crushed by a blunt weapon. In his bedroom was discovered the limb of a cherry tree, spotted with blood, and sufficiently heavy to have caused the wounds resulting in Casey's death. There was evidence that entrance into Casey's bedroom was effected by means of a ladder and porch roof. The combination lock of the safe in Casey's store, which was on the first floor of the building in which Casey lived, had been knocked off and the safe left open. A hatchet and shutter bolt were found near the safe, and while some coins were found in the safe, and money and valuables about his bedroom remained undisturbed, a black leather wallet which the deceased was familiarly known to keep in his safe and in which he kept his paper money and checks before depositing them in bank, was missing, and a check was found lying on the floor in front of the safe. The wallet had been last seen by the only witness who spoke with reference to it, on the Monday preceding the murder.

Aside from testimony showing the presence of the prisoner in the vicinity of the Casey house on the night of the murder, there was evidence to the effect that footprints made by shoes with peculiar markings were discovered in a plowed field near the Casey property, that these footprints led to the bank of the river and to and about a cherry tree from which a branch had been twisted or torn, that the footprints then returned and pursued a direction towards the Casey house, where they ceased at the edge of the plowed ground, and that the limb of a tree found in Casey's bedroom, spotted with blood, fitted or matched precisely the twisted or broken part in the cherry tree toward which and from which the footprints led, and lastly it was shown that the peculiar footprints were made by shoes which the prisoner admitted to be his own.

The prisoner testified in his own defense, denying his guilt

and resorting to an *alibi*. On cross examination by the Attorney General he was asked the question and made the answer following:

"X. I will ask you whether or not on September sixteenth of this year, at the workhouse, you did not tell Mr. Wolcott, in the presence of Detective Gillis and Mr. Walter Hastings, one of the guards at the workhouse, that on the Saturday after the murder you had no money, that you had not worked that week because it was wet, and there was nothing coming to you?

"A. I certainly did."

When the defense had closed, Edward Stephenson was produced as a witness for the state and under objection by the counsel for the prisoner, the court permitted the state to show by him that the prisoner had considerable money on the morning after the murder, in contradiction of the prisoner's admission to the contrary, confined the examination to that contradiction and allowed the witness by answering appropriate questions to testify in substance, as follows: That he had known the prisoner for a year or more; that he saw him on Saturday, August 20th, 1910, about a mile above Brandywine Springs; that he talked with the prisoner and had two drinks with him; that the prisoner wanted him to stop his work and go with him to a nearby brewery, and offered to pay him for his day's wages; that the prisoner had money jingling in his pocket, pulled it out and showed it to him, saying, "I have got some money. I will pay you for your day"; that the money he had was both paper and silver, the paper money being in a roll as big as the top of a glass (indicating an ordinary tumbler).

Counsel for the prisoner contends that in admitting in rebuttal the testimony of Stephenson, the trial court erred for the following reasons:

*First.* The evidence of Stephenson, if admissible at all, was admissible only in contradiction of the prisoner, and as no grounds were laid for such a contradiction when the prisoner was under cross examination, the evidence is wholly inadmissible. The court recognizes the general rule that a witness cannot be contradicted without first laying the legal ground by addressing his attention on cross examination to the time, place and persons present when

the statement was made with respect to which contradiction is intended, but when a witness is a party, the legal grounds need not be laid, for the party's statements are received in the nature of admissions and, when material, are admissible whether the party appears as a witness or not.

*Second.* The answer of the prisoner, that he did tell Mr. Wolcott that on Saturday morning after the murder he had no money, was in no sense evidence given at the trial that he had no money on that Saturday morning. From this we gather that counsel means that the prisoner's admission on the stand that he told Mr. Wolcott at another time that he had no money on the Saturday morning was not evidence given by the prisoner at the trial, that in fact he had no money on that morning, and therefore there was in the case no evidence to rebut by Stephenson's testimony. To this proposition we do not accede, for it is a well established rule of evidence, that the prosecution may prove the admissions of a defendant in excuse of the act charged and then show the falsity of the excuse (*Commonwealth v. Grose*, 99 *Mass.* 423), so in this case the admission of the prisoner that he told another that he was without money, being in evidence, and if material, the state may proceed to show the falsity of the statement admitted to have been made. *Commonwealth v. Williams*, 171 *Mass.* 461, 50 *N. E.* 1035.

*Third.* If the testimony admitted in rebuttal was material, and admissible at all, it should have been introduced in the state's case in chief and not in rebuttal. With respect to this contention we say, that as a general rule it is for the state to prove the allegations of the indictment on which it relies and to produce all its evidence upon the issue; and then the defendant should put in all his evidence, and in reply the state is restricted to such new matter as may be first opened by the defendant's evidence. *Ridgely v. State*, 75 *Md.* 510, 23 *Atl.* 1099, citing 1 *Greenl. Ev.* (12*th Ed.*) 467*a; Abbott's Trial Brf. C. C.* 305-309. From this general rule there may be many departures to meet the requirements of particular cases, and these departures are made more out of consideration to the administration of justice than to technical rules of procedure. It is generally held that it is no objection to

evidence in rebuttal that it strengthens the case in chief, if in its nature it rebuts or tends to disprove evidence in defense. *State v. Lawrence*, 70 *Vt.* 524, 41 *Atl.* 1027. While some cases hold that nothing which tends directly to prove the case in chief and which does not bear directly upon the subject matter of the defense should be admitted in rebuttal (12 *Cyc.* 557), nevertheless, according to the weight of authority, it is in the discretion of the court to permit evidence to be given in reply which should properly have been given in chief. *Chase's Stephen's Ev.* (*2d Ed.*) 319; 12 *Cyc.* 557; *Abbott's Trial Brief*, 305-309; *Moore v. State*, 96 *Tenn.* 209, 33 *S. W.* 1046; *Bannon v. Warfield*, 42 *Md.* 22, 38. Between the extremes of these rules appears the one which we think meets the case under consideration, and which in principle was recognized in the case of the *State v. Jack*, 4 *Pa.* 470, and it is that a party has a right to give evidence in rebuttal in reply to the case of his adversary, even if such evidence in reply incidentally tends to corroborate and strengthen his case in chief. *Abbott's Tria Brief*, 308; *State v. Fourchy*, 51 *La. Ann.* 228, 25 *South.* 109; *State v. Magoon*, 50 *Vt.* 333; *People v. Kindra*, 102 *Mich.* 147, 60 *N. W.* 458; *State v. Jacobs*, 28 *S. C* 29, 4 *S. E.* 799; *White v. State*, 100 *Ga* 659, 28 *S. E.* 423; *Moore v. State*, 96 *Tenn.* 209, 33 *S. W.* 1046.

In the case under consideration, the state, upon the authority of *Commonwealth v. Grose*, 99 *Mass.* 423, might have made the admission of the prisoner a part of its case in chief, by the testimony of those in whose presence the statement was made, and then in its case in chief have shown the falsity of the admission by the testimony of Stephenson, but when the prisoner was asked the question and by his answer gave evidence that tended to relieve him of the incriminating circumstance of the possession of a large amount of money and to that extent tended to prove that he was not present at Casey's house on the night before, he was making a case in his own defense, the falsity of which may properly be shown in rebuttal, although the evidence in rebuttal tends further to strengthen the case first set up by the state in chief.

*Fourth.* The fourth contention of counsel for the prisoner is that the evidence of the prisoner in answer to the question pro-

pounded to him on cross examination was immaterial, and as evidence in contradiction of an immaterial matter is inadmissible, the evidence of Stephenson contradicting the prisoner upon an immaterial point was improperly admitted.

This contention is predicated upon the theory that as the evidence of money being in Casey's safe on the night of the murder was limited to the circumstance of Casey's habit of keeping his bank notes and checks in his black wallet and the wallet in the safe, there was no evidence of money actually being in the safe to be stolen, therefore the possession of a considerable sum of money by the prisoner is immaterial, as it proves nothing. It is further suggested that any inference of guilt drawn from the prisoner's possession of money is an inference upon the inference that money was stolen from the safe, which is against the rule that an inference upon an inference will not be permitted. The existence of such a rule is asserted by some text writers and denied by others (1 *Wigmore*, § 41; *Hinshaw v. State*, 147 *Ind.* 334, 363, 47 *N. E.* 157; *People v. Ah Chung*, 54 *Cal.* 398), and might be worthy of consideration if the issue were one of larceny instead of murder. The issue being one of murder, the testimony that related to the breaking of the safe, the habit of the deceased in keeping paper money and checks in the black wallet and keeping the wallet in the safe, its disappearance with its contents, save for a stray check, contemporaneously with the murder, and the after possession by the prisoner of a considerable sum of money, his display of it and its sudden acquisition (as shown against his statement to Mr. Wolcott), are circumstances separately and independently proved by testimonial evidence which the jury might consider with other circumstances independently proved, namely, the footprints made by shoes belonging to the prisoner leading from the cherry tree toward the Casey house in which the limb of the tree was found, and from all of which circumstances the jury might reasonably infer and conclude that the footprints were made, the tree limb carried and the murder committed by the same man who opened the safe, and had access to the place where the black wallet and its contents were usually kept. The habit of Casey in keeping his bank notes and checks in a wallet and his wallet in the safe,

the open safe, the stray check upon the floor, and the disappearance of the wallet and its contents, constitute a cluster of circumstances from which the jury might reasonably infer the presence of money in the safe at the time it was entered, and, with the other legitimate inferences drawn separately and collectively from separately proven facts, it is relevant, in order to meet the effect of the prisoner's statement that he had no money, which tended to prove his absence and his innocence, for the state to show he was possessed of a large roll of money on the morning after the safe was opened and Casey killed, in contradiction of his statement that he had none, and that he was d'splaying it and acting with it otherwise than indicated by his admitted statement that he had no money, that he had not worked that week because it was wet and there was nothing coming to him. *Wills on Circumstantial Ev.* 54, 57, 71, 74.

The testimony of Stephenson when considered in reply to the admission of the prisoner does more than to contradict the prisoner's statement that he had no money, in that if it were true that the week had been wet and the prisoner had not worked and nothing was coming to him, as stated by hin in his admission, then if Stephenson's testimony be true, the money which the prisoner possessed the morning after the murder was recently acquired by him, and brings the circumstance within the rule that allows the inference of guilt upon proof of possession and without proof of identification of money. 1 *Wigmore*, § 154; *Wills on Circumstantial Ev.* 54, 57, 71, 74.

The circumstance of the after and sudden possession of money by the prisoner, as shown in this case, is one upon which may be predicated the natural hypothesis that the acquisition was accompanied by guilt (*Gates v. People*, 14 *Ill.* 433, 438; 1 *Wigmore*, § 154), yet proof of such a possession does not have to be conclusive in its inference of guilt, and possibly under indictment for larceny, independent of other circumstances, would not require the prisoner to satisfactorily account for its possession. By itself and considered without reference to the other circumstances proven, the possession of the money does not prove the guilty presence of the prisoner at the scene of the crime. But, as Judge Holmes said

in the case of *Commonwealth v. Mulrey*, 170 *Mass.* 103, 110, 49 *N. E.* 91, 94: "It is not necessary that every piece of evidence admitted should be sufficient by itself to prove the crime. Evidence which would be colorless if it stood alone may get a new complexion from other facts which are proved, and in turn may corroborate the conclusion which would be drawn from the other facts." *Commonwealth v. Devaney*, 182 *Mass.* 33, 35, 36, 64 *N. E.* 402; *Commonwealth v. O'Neill*, 169 *Mass.* 394, 48 *N. E.* 134; *Commonwealth v. Montgomery*, 11 *Metc.* (*Mass.*) 534, 45 *Am. Dec.* 227; *State v. Burns*, 19 *Wash.* 52, 52 *Pac.* 316; *Commonwealth v. Williams*, 171 *Mass.* 461, 50 *N. E.* 1035.

We are therefore of opinion that the admission of the prisoner was material and the evidence of Stephenson in rebuttal was likewise material, and together disclosed circumstances, to be weighed by the jury, and from which in conjunction with the rest of the evidence in the case, the jury might reasonably infer the guilty presence of the prisoner at the scene of the crime.

The judgment of the court below is affirmed.