## UNITED STATES v. SMOLIN.

### No. 216, Docket 21649.

United States Court of Appeals
Second Circuit.

Argued May 12, 1950.

Decided June 12, 1950.

Irving H. Saypol, United States Attorney, New York City, for appellee, Bruno Schachner, Frederick H. Block, John M. Cunneen, Assistant United States Attorneys, all of New York City, of counsel.

Herbert Zelenko, New York City, Richard C. Machinski, Brooklyn, N. Y., for appellant.

Before SWAN, AUGUSTUS N. HAND and CHASE, Circuit Judges.

CHASE, Circuit Judge.

This appeal is from a conviction after trial by jury on an indictment in two counts filed December 22, 1948.

The first count charged the appellant and four others, Vito Hordon Cordo, Arthur Lief, Pasquale William Di Pinto, and Sam Schatz, with the substantive crime of possessing goods they knew had been stolen while a part of an interstate shipment of freight. The second count charged the same defendants and others unknown with conspiring to commit the crime alleged in the first count. Cordo, Lief and Di Pinto all pleaded guilty. Schatz and Smolin were tried together and both were convicted. Smolin was sentenced on the substantive count but sentence on the conspiracy count was suspended and he was placed on probation. He alone has appealed.

On the evidence adduced at the trial, the jury could have found as follows: On April 26, 1946 a truckload of merchandise arrived at the Whisenant Transfer Company, Inc., 417 East 37th Street, New York City from Malden, North Carolina. The shipment was then checked against the freight bills by the Whisenant Company's General Traffic Manager, Mr. Leeds. He noted that each carton or bale had on it the name and address of its consignor and the consignee. On Monday, April 29, upon arriving at the terminal, Mr. Leeds was advised that the locks on the terminal doors were broken and that the doors had been separated a bit. Upon entering the terminal, he found that some 23 cartons and bales of rayon and cotton fabrics and piece goods were missing. Lief, Cordo and Di Pinto had on Saturday, April 27 backed a truck into the terminal and loaded it with some 20 or 21 cartons and bales, according to Cordo; some 19 or 20, according to Di Pinto; and some 20 or 21, according to Lief. Di Pinto then drove the truck to a parking lot across the street from Cordo's home in Brooklyn, where it remained until Monday morning. After a telephone call by Cordo to one, Minkhoff, Di Pinto and one Varelli drove the truck on Monday morning to a garage at 17th Street and 10th Avenue, New York, where they commenced to unload with the help of two brothers named Boruck. The truck was, however, reloaded and Di Pinto, Varelli and the Boruck brothers drove the truck to Tenth Avenue, between 14th and 15th Streets, where they loaded its contents onto an empty trailer. The Borucks and Minkhoff then returned to the garage, having with them a roll of piece goods. On the following day, Cordo through one, Di Mario, met the defendant Schatz in the latter's offices at the National Flag Company on 21st Street. Cordo told Schatz that he had a load of stolen goods and asked if Schatz could get rid of it. Schatz said that he could not buy it but that he had someone who could handle it. Cordo went downstairs where he met Lief and told him that Schatz had a buyer for the merchandise. They then went upstairs where Schatz telephoned appellant Smolin and told him that he had a "good buy" on "woolens." Smolin told him to send them down and that he would take a look. Schatz said to him, "I think, Irving, if you buy this goods there will be a commission there for us." "Well," replied Smolin, "let me buy it." After the phone call Schatz told Cordo and Lief to take the merchandise to 809 Broadway, where they would see a "Mr. Daly." He was the defendant Smolin. Cordo rented a truck; Varelli and another drove it back to the trailer on Tenth Avenue and loaded it; and Cordo, Lief and Schatz went to 809 Broadway, which was a store leased by Smolin. There they met Smolin and Cordo told him "We got a load coming over here —I believe it is dress goods." Cordo said "I am kind of leery about unloading the load because it is stolen goods." Smolin told him not to worry, because there was a parade going on and the police would be

busy with it. The truck arrived, and Varelli and Lief unloaded 20 or 21 cartons and bales from it. These were taken into Smolin's store and there opened. While they were being opened Cordo observed that there were names and addresses on the outside of them. Smolin said he was satisfied with the merchandise and Cordo and he agreed upon a price of $4500. Smolin asked for a receipt, but Cordo refused, saying, "I am not giving you no bill for stolen merchandise." Smolin told him not to get excited and that he would take it anyway. Smolin gave Cordo and Lief $2,000 each in cash and told Cordo to go on the following day to "Daly's," a store on 14th Street owned by Smolin, for the remainder of the purchase price. Smolin asked Cordo to remove the empty cartons and bales, but the latter refused. Smolin then asked someone from the store to take them away and burn them, and to make sure that they were burnt. At lunch that day, Schatz asked Smolin "How much commission is there going to be for us?" Smolin replied, "$500." The following day, Cordo accepted $300 from Smolin as the remainder of the purchase price.

Subsequently, Cordo, Lief and Di Pinto were apprehended, indicted and pleaded guilty as already stated. Cordo went to Schatz and asked for money, saying that his and the others' case was "up." Schatz gave him $25 and said, "Please don't implicate us in on this." Cordo then asked Schatz where he could get in touch with Smolin, and Schatz arranged an appointment for Cordo with Smolin at the latter's 14th Street store, but Smolin did not keep it. Before Cordo was to be sentenced, however, he did reach Smolin by telephone and the latter told him "You are not getting no money out of me. You can do what you please. You don't even know me." Cordo then made a statement to the F. B. I. implicating Smolin and Schatz, and the latter were arrested.

 Appellant claims, first, that there was insufficient evidence to permit the jury to find that the goods that were stolen from the Whisenant Company's terminal were those that he bought. Some 23 cartons and bales were, however, missing from the terminal and the thieves, Cordo, Di Pinto and Lief, testified that they had taken some 19 to 22 cartons and bales, and that 20 or 21 were sold to appellant. Those stolen weighed, according to the Whisenant traffic manager, about 300 to 400 pounds. According to Cordo, those he and the others stole weighed from 100 to 400 pounds. Appellant argues that there is no proof that other goods were not substituted for those stolen during the time that they were in the truck across the street from Cordo's home or in the trailer parked on Tenth Avenue. He, however, had the burden to show that there was a substitution. Cf. United States v. S. B. Penick & Co., 2 Cir., 136 F.2d 413; Cataneo v. United States, 4 Cir., 167 F.2d 820, 824; 2 Wigmore on Evidence, 3d Ed., § 437. His mere assertion of such a possibility does not even approach proof to be seriously considered in contradiction of the evidence on which the jury identified the goods as those which were stolen.

 A more serious question relates to the testimony of an F. B. I. agent called by the government in its opening case. This agent testified that after appellant's arrest he was interrogated, and denied knowing Cordo, Di Pinto, Varelli, Lief, Schatz or Schatz' partner, or that he had at any time stored anything or had any business at 809 Broadway. The agent also testified that found in appellant's possession was a notebook containing the name of Schatz' partner and the address 809 Broadway, but that appellant refused to answer when questioned about them. Appellant moved to strike the agent's testimony on the ground that his denials did not amount to admissions and the motion was denied. He argues that the only possible purpose of the testimony was to impeach him, and he had not then and might, absent this testimony, never have taken the stand. It is true that error in the admission on the prosecution's direct case of evidence admissible only for purposes of impeachment may not be cured by the defendant's subsequently testifying in his own behalf or introducing evidence of good character. United States v. Modern Reed & Rattan Co., 2 Cir., 159 F.2d 656, certiorari denied 331 U.S. 831, 67 S.Ct. 1510, 91

L.Ed. 1845. But exculpatory statements, such as those appellant made upon interrogation, when shown to be false, are circumstantial evidence of guilty consciousness and have independent probative force. Tucker v. United States, 151 U.S. 164, 14 S.Ct. 299, 38 L.Ed. 112; Commonwealth v. Madeiros, 255 Mass. 304, 151 N.E. 297, 47 A.L.R. 962; State v. Stacy, 104 Vt. 379, 160 A. 257, 747; 2 Wigmore on Evidence, 3d Ed., § 278. Testimony as to them is, therefore, admissible on the government's direct case; indeed, in the only case which has come to our attention as being one in which the time of presentation of such evidence was questioned, it was the prosecution's failure to introduce it in its case in chief that was assigned as error. Roberts v. State, 2 Boyce 385, 25 Del. 385, 79 A. 396, Ann.Cas.1914D, 1266.

■ Appellant argues that certain of his requests to charge—all to the effect that before he could be convicted the government had to prove that he must have known that the goods were stolen at or before the time they were delivered to him—were erroneously denied. However, the court specifically charged that " * * * the prosecution in this case must prove beyond a reasonable doubt * * * that the defendants knew such goods to be stolen when they received them into their possession." That sufficiently complied with such requests and failure to adopt the language of them is of no consequence.

■ With respect solely to the conviction on the conspiracy count, appellant contends that there was insufficient evidence for the jury to find that he knew that the goods were stolen while in interstate commerce. Such knowledge is, we have recently held, necessary to support a conspiracy count, though not necessary on the substantive charge. United States v. Sherman, 2 Cir., 171 F.2d 619. The cartons and bales, however, had on them the names and addresses of the North Carolina consignors and the New York consignees. Appellant saw the cartons and bales and had them burned. We think this was sufficient to permit the jury to find that he had the requisite knowledge.

■ Appellant also insists that, under the rule in United State v. Zeuli, 2 Cir., 137 F.2d 845, where we held that neither the buyer of stolen goods nor the thief may be convicted of conspiring with each other to receive them, he could not be convicted on both the substantive and conspiracy counts, since the substantive crime necessarily involved the cooperation of two persons. But here there was proof of a conspiracy between appellant and Schatz, who was not one of the thieves, to buy the goods. Appellant agreed to pay the latter a commission for steering the stolen merchandise to him. While the crime of receiving and possessing stolen goods necessarily involves the cooperation of the thief and the buyer, it does not necessarily involve the cooperation of the buyer and a go between like Schatz. That distinguishes United States v. Zeuli, supra, from this case.

■ Appellant also claims that there was a variance between the conspiracy count and the proof in that the evidence showed appellant not to be a party to the conspiracy between the thieves to steal the goods. He does not object to the admission of evidence showing the goods to have been stolen and that, of course, was clearly admissible. United States v. Tannuzzo, 2 Cir., 174 F.2d 177, 181, certiorari denied, 338 U.S. 815, 70 S.Ct. 38. But he does contend that the evidence of statements made by the thieves to each other in planning the theft and disposal of the goods— that was admitted over appellant's objection and subject to connection—should have been stricken out, as hearsay and prejudicial, inasmuch as he was not connected to the theft. Of the many admitted statements made by the thieves, most were not prejudicial since they referred neither to appellant in particular nor to the disposition of the goods in general. Those that were not so colorless were admitted solely as against the defendant Schatz and as to them the appellant has no grievance for which a remedy is available. Cf. United States v. Cohen, 2 Cir., 145 F.2d 82, 95; certiorari denied, 323 U.S. 799, 65 S.Ct. 553, 89 L.Ed. 637. His only protection is the limited admission of it which made the evidence inapplicable to him. United States

v. Gottfried, 2 Cir., 165 F.2d 360, 367, certiorari denied 333 U.S. 860, 68 S.Ct. 738, 92 L.Ed. 1139. Di Pinto's testimony that Cordo told him that "Mr. Daly" (Smolin) had bought the merchandise, was volunteered by Di Pinto on cross examination by defendant Schatz' counsel and, having made no motion to strike it out, appellant cannot now be heard to complain.

Judgment affirmed.