COMMONWEALTH *vs.* JOHN O'NEIL.

Franklin. September 28, 1897. — November 11, 1897.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Homicide — Evidence.*

At the trial of an indictment for the murder of a woman, there was evidence that, within about two hours after the murder, the defendant had in his possession money consisting of a ten-dollar bill, a five-dollar bill, and fifty cents in silver; that within about one hour before the murder, and for some time previously, he had no money of any kind; that he gave false and contradictory accounts of the way in which he obtained the bills and silver; and that, while talking of the death of the woman to a prisoner in the jail, he admitted that he had ten dollars of her money. *Held,* that evidence that the deceased, on the day before the murder, received a check of a certain amount and from its proceeds paid bills and made purchases, leaving a balance in her possession consisting of a ten-dollar bill, a five-dollar bill, and some change, and that a search of her house by her sister two days after the murder disclosed only a few cents in money, was proper for the consideration of the jury in connection with the other evidence in the case.

INDICTMENT for the murder of Hattie E. McCloud, on January 8, 1897, at Buckland, by strangulation. At the trial in the Superior Court, before *Mason*, C. J., *Fessenden* and *Sheldon*, JJ., the jury returned a verdict of guilty; and the defendant alleged exceptions to the admission of certain evidence, the nature of which appears in the opinion.

*E. H. Beer*, for the defendant.

*J. C. Hammond*, District Attorney, (*F. L. Greene* with him,) for the Commonwealth.

KNOWLTON, J. The bill of exceptions in this case does not purport to give the evidence in full, but only so much of it as bears upon the questions of law. No question in regard to the weight or sufficiency of evidence is presented, but only the question whether the testimony objected to was competent for the consideration of the jury in connection with the other circumstances of the case.

Among the circumstances relied on by the Commonwealth was the alleged possession by the defendant, immediately after the murder, of money which the deceased had in her possession when she was attacked. There was testimony tending to show

that within about two hours after the murder the defendant had in his possession a ten-dollar bill, a five-dollar bill, and either two quarters of a dollar or a fifty-cent piece in silver.

The evidence tended to show that, at the time of his going to supper, a little more than an hour before the supposed time of the murder, and for some time previously, he had no money of any kind, and there was testimony that he gave false and contradictory accounts of the way in which he obtained the bills and silver which he had later in the evening.

There was also testimony that, while talking of the death of the murdered woman to a prisoner in the jail, he admitted that he had ten dollars of her money, and said that, if he had not been drunk, it would not have happened, although at the same time he denied choking her.

With this evidence for the consideration of the jury, and other circumstantial evidence tending to connect the prisoner with the crime, it was important for the Commonwealth, if it could, to introduce additional evidence that the money seen in his possession soon after the murder was taken from the deceased.

All the evidence objected to related to this subject. The objection was general that it was too remote. The testimony tended to show that the murder was committed at a little after seven o'clock in the evening of January 8. There was testimony that at about four o'clock in the afternoon of January 7, the father of the murdered woman gave her two checks, one of $40, and the other of $39.60 ; that soon afterward she went from her home about a mile, to the village of Shelburne Falls, and gave the check of $39.60 in payment of a bill of $16.53 which she owed, and received the balance in the form of a ten-dollar bill, two five-dollar bills, and smaller bills, the denominations of which did not appear. She made a payment of $4.18 at the village that afternoon, before she returned home, and some other payments on the next evening, for which she paid sums amounting in all, including a small payment for washing, to $3.06, making the aggregate of payments $7.24 from the $23.07 which she received from the proceeds of the check. There was testimony that she was accustomed to keep her money in a pocket-book, and her pocket-book in a shopping bag.

The two checks, and afterwards one of the checks and the

money, were so kept on January 7 and January 8. The shopping bag and pocket-book, as well as several small articles which she had purchased, were found near her body when the murder was discovered, and in her pocket-book were the $40 check and eight cents in money, and in the bottom of the bag were eight cents more. The balance unaccounted for from the proceeds of the check was $15.67; $15 of that, when last seen in her possession, was in the form of a ten-dollar bill and a five-dollar bill. The amount seen in the defendant's possession soon after the murder was $15.50, consisting of a ten-dollar bill, a five-dollar bill, and fifty cents in silver.

The deceased lived with her daughter, nine years old, in a house about forty feet from the house of her father, and about a mile from the business part of the village of Shelburne Falls. There was no evidence that she was absent from her house between the time of the receipt of the checks in the afternoon of January 7 and the time of her death, except as she went to the village in the afternoon of January 7, and again at about five o'clock in the afternoon of January 8, and that she called at her father's house on the evening of January 7.

There was evidence that she was seen at her own house shortly before noon on January 8. When she went to the village on January 8, she left her daughter alone in the house. The daughter remained there alone until about half past six o'clock, except for a few minutes, when she went to the house of her grandfather, forty feet away.

From half past six until ten o'clock in the same evening, an adult sister of the deceased and a boy who had come there by appointment to receive a music lesson from the deceased, remained in the house. They then left the house and locked it up, and it remained locked and unoccupied until January 10, when it was thoroughly searched by a sister of the deceased, who was allowed to testify that she found in it no money except three or four cents. It did not appear that any one had entered the house in the mean time, except some member of the family of the father of the deceased.

The testimony objected to was that in regard to the financial transactions of the deceased on January 7, and in regard to the search of the house on January 10. The objections go to its

weight rather than to its competency. By the plans and the testimony, and perhaps by a view, the jury became familiar with the neighborhood where the deceased resided, and they learned something of her habits and mode of life. That the possibility of her having expended money other than that shown was not absolutely excluded did not render the testimony incompetent. The details of her dealings and the circumstances of her life shown by the testimony might have satisfied the jury that the probability of such expenditure was exceedingly small. The possibility, if there was a possibility, that the contents of her pocket-book might have been stolen during the half hour that the bag and the other articles found near the body lay on the floor of the piazza of her father's house, or remained in the kitchen before the bag and pocket-book were examined, affects the weight of the evidence, but the jury might have considered it too small to be important.* The same may be said of the possibility that a burglar entered the house and stole her money after her death, and before the house was searched.

The bills were not identified by ear-marks, but they corresponded in denomination, and such a likeness is often proper to be considered in connection with other incriminating evidence. See *Commonwealth* v. *Sturtivant,* 117 Mass. 122; *Commonwealth* v. *Scott,* 123 Mass. 222; *Commonwealth* v. *Billings,* 167 Mass. 283; *Riggs* v. *State,* 104 Ind. 261.

In the present case the testimony was not only to be considered in connection with other circumstances tending to show the guilt of the prisoner, but also with the prisoner's admissions on this very point, that he had ten dollars of the money of the deceased.

The testimony objected to was proper for the consideration of the jury, in connection with the other evidence in the case.

*Exceptions overruled.*

---

* It appeared in evidence that the body of the deceased was discovered by her father in some woods about seventy feet from the highway and about a quarter of a mile from her home; that soon after such discovery he gathered the bundles and hand-bag, which lay near the body, and, running to his house, threw them upon the floor of the piazza, where they remained without examination for about half an hour unguarded; and that they were afterwards removed without examination to the kitchen of the house.