## COMMONWEALTH *vs.* ALFRED C. WILLIAMS.

Essex.   May 16, 1898. — June 23, 1898.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Homicide — Evidence.*

At the trial of an indictment for murder, it appeared that early in the morning of a certain day the house of the man alleged to have been murdered was burned down, and the remains of a human body of uncertain sex were found in the ruins. There was no identification of the body otherwise than by the place where it was found, by the fact that the man had been seen at his house the previous evening and was seen no more, and by a clasp of a pocket-book like his found near the remains; and there was no direct evidence of the commission of a crime. *Held,* that the other evidence in the case, relating mainly to the appearance and conduct of the defendant after the fire, to the articles found in his room, and to the habits of the missing man, taken with the facts above mentioned, warranted the jury in finding it proved beyond a reasonable doubt that the man was murdered, and was murdered by the defendant.

At the trial of an indictment for the murder, in July, of a man whose house was burned down, the remains of a human body supposed to be his being found in the ruins, it appeared that officers who searched the defendant's room found two secreted twenty-dollar gold pieces; and that the missing man had no bank account, but apparently kept his money as he earned it, except the very small sums which he had to spend for his living. *Held,* that evidence that the man was paid one twenty-dollar gold piece in December preceding the fire, that he exhibited four such pieces in the following March, and exchanged one for paper money, and that he had three such pieces at Easter and in May, was not open to the objection of remoteness, having regard to his habits.

A person who was under arrest upon suspicion of robbery and murder, and whose room had been searched by an officer and bloody clothing and two secreted gold pieces found there, and who previously had told of having been assaulted and having found some money, was asked by the officer, " How is it that that blood came on your drawers ? " to which he replied, " This morning when I came into my room my hands were all bloody and I took the first thing that I could find to wipe them off, and that was the pair of drawers." He was then asked by the officer, who exhibited the gold pieces, " Do you know where I got those ? " and answered in the negative. The officer then said, " I got them up in your room under the carpet on the floor "; to which he replied, "I know it, I put them there." *Held,* upon an indictment for murder, that the evidence of what he said to the officer was admissible.

INDICTMENT, for the murder of John Gallo, on July 28, 1897, at Lynnfield.   At the trial in the Superior Court, before *Dunbar* and *Braley*, JJ., the jury returned a verdict of guilty; and the defendant alleged exceptions, which appear in the opinion.

*C. A. Sayward & N. N. Jones,* for the defendant.

*A. P. White,* District Attorney, for the Commonwealth.

HOLMES, J. Evidence which is colorless taken by itself, which establishes neither a constituent nor a fact pointing by inference to a constituent of a crime, may be made significant by other evidence, and so may be made admissible. It need not be self-justifying without regard to the other circumstances proved. *Commonwealth* v. *O'Neil,* 169 Mass. 394. What is true of any part of the evidence is true with regard to the whole of it. And it also is true, in this Commonwealth at least, that there is no one dominant part of the case which must be proved as directly as possible in the nature of things before evidence of a remoter kind is admissible to connect the defendant with the supposed crime. No doubt the jury ought to be very sure that a crime has been committed before they convict a person of having committed it. But even upon an indictment for murder, the evidence of the death as well as of every other material fact may be insufficient singly, and yet the evidence taken as a whole may leave no reasonable doubt of the crime or of the defendant's guilt. The facts in a circle support one another, when if any one were withdrawn they all would fall to the ground. *State* v. *Williams,* 7 Jones, (N. C.) 446. *Campbell* v. *People,* 159 Ill. 9. *State* v. *Martin,* 47 S. C. 67. *Commonwealth* v. *Johnson,* 162 Penn. St. 63. *United States* v. *Williams,* 1 Cliff. 5, 21. *Laughlin* v. *Commonwealth,* 37 S. W. R. 590; *S. C.* 18 Ky. Law Rep. 640. See *Commonwealth* v. *Webster,* 5 Cush. 295, 310, and more especially Bemis's Report of the Trial, 479, 480. Other cases are collected in 7 Am. & Eng. Encyc. of Law, (2d ed.) 863, 864, *sub voc.* "Corpus Delicti."

The case at bar is a striking example and proof of the foregoing general rules. Early in the morning of July 28, 1897, the house of Gallo, the man alleged to have been murdered, was burned down. The remains of a human body of uncertain sex were found in the ruins. If we leave on one side the evidence bearing on the other issues of the case, there was no identification of the body otherwise than by the place where it was found, by the fact that Gallo had been seen at his house the previous evening and was seen no more, and by a clasp of a pocket-book like Gallo's found near the remains. There was

no direct evidence of the commission of a crime. Yet the other evidence, taken with the facts just mentioned, warranted the jury in finding it proved beyond a reasonable doubt that Gallo was murdered, and was murdered by the defendant.

At about a quarter past four in the morning, near the time that the fire was discovered, the defendant appeared two and seven tenths miles away, at the Carleton House in the town of Wakefield, heated, flushed, and excited, with blood stains upon him, his hat gone and his clothing disturbed, and told a story which subsequent investigation did not confirm, that he had been attacked and robbed of a gold watch by the side of a pond which he naturally would have passed in coming from Gallo's house. Tracks of a running man were found going from Gallo's house in the direction of a path leading to the pond. On the day before the fire, the defendant was penniless and wanting money to go to Klondike. In telling of the robbery he said that he had sent for seventy-five dollars and was glad he had not received it. At nine o'clock on the same morning he said that he sent for two hundred dollars and expected to hear before Saturday. At ten o'clock he produced a roll of bills, from which he took one of five dollars and spent the greater part of it. On the evening of the same day, after telling different stories to the police, when about to be searched, he produced a roll of five ten-dollar and four five-dollar bills, which at first he said his brother had sent to him by mail, and then declared that he found by the pond where he was assaulted as he was coming down. Upon an officer pressing him further, he turned very white, perspired, and hardly could speak for a time, but persisted that he found the money as he said. Then the officers searched his room and found very bloody clothing and two secreted twenty-dollar gold pieces, of which at first the defendant denied knowledge, but which afterwards he said he found with the rest. It appeared that Gallo had had three twenty-dollar gold pieces, and some time before had been paid one hundred and nine dollars mostly in ten and five dollar bills. Gallo seemingly had no bank account, and seems to have kept his money as he earned it, except the very small sums which he had to spend for his living. With reference to the question whether a crime had been committed, it should be added that

the kerosene can usually kept by Gallo in another place was found in the bedroom, between the body and the place of the bed; and although we are not attempting to state details, it should be noticed as possibly significant that the defendant, when told that the Italian's shanty was burned and that he was burned in it, answered, "Was he all burned up?"

The outline which we have given of the case seems to us enough to show that it could not have been taken from the jury, and that a request to direct a verdict for the defendant properly was overruled. It only remains to consider exceptions taken to the admission of evidence.

The first four exceptions were respectively to evidence that Gallo was paid one twenty-dollar gold piece in December, 1896, that he exhibited four such pieces in March, 1897, and exchanged one for paper money, and that he had three such pieces at Easter and in May. The objection is that the times referred to were too remote from the date of the fire. But when the habits of Gallo as we have stated them are taken into account, there is every probability that money which he had six months earlier he still would have, except so far as it was needed for his very limited expenditures. It is altogether probable that the gold pieces which he had in March were the same which he had in May. No argument was attempted on the ground that the money which Gallo had was not shown by earmarks to be the same which was afterwards in the hands of the defendant. *Commonwealth* v. *O.Neil*, 169 Mass. 394, 397.

The two remaining exceptions are to the admission of evidence of what the defendant said while in the custody of the officers.* These were not argued orally, and were understood to be waived. But as the point is raised in the brief, and *Bram* v. *United States*, 168 U. S. 532, is cited, we may say that we see nothing to render the evidence inadmissible by the law of this

---

* This evidence was as follows. The defendant was asked by one of the officers, "How is it that that blood came on your drawers?" to which he replied, "This morning when I came into my room my hands were all bloody and I took the first thing that I could find to wipe them off, and that was the pair of drawers." He was then asked by the officer, who exhibited the gold pieces, "Do you know where I got them?" and answered in the negative. The officer then said, "I got them in your room under the carpet on the floor"; to which he replied, "I know it, I put them there."

Commonwealth, either on the ground that what was said was not said voluntarily, or that the *corpus delicti* was not proved. As to the former ground, see *Commonwealth* v. *Bond*, 170 Mass. 41; *Commonwealth* v. *Preece*, 140 Mass. 276; *Commonwealth* v. *Cuffee*, 108 Mass. 285. As to the latter, if there be any such condition attached to the admissibility of a prisoner's own statement, the jury were warranted by the other evidence in finding that Gallo had been murdered. See *United States* v. *Williams*, 1 Cliff. 5, 21; 6 Am. & Eng. Encyc. of Law, (2d ed.) 581, 582, *sub voc.* " Confessions."　　　　　　　　　　*Exceptions overruled.*