## SILVERFARB v. UNITED STATES.
### Nos. 219, 220.

Municipal Court of Appeals for the District of Columbia.

Dec. 1, 1944.

Daniel M. Narodick, of Washington, D. C. (Albert Brick, of Washington, D. C., on the brief), for appellant.

John D. Lane, Asst. U. S. Atty., of Washington, D. C. (Edward M. Curran, U. S. Atty., and John P. Burke, Asst. U. S. Atty., both of Washington, D. C., on the brief), for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

RICHARDSON, Chief Judge.

Defendant has appealed from convictions on two informations charging sales of onions at prices exceeding the maximum ceiling price fixed by regulation under the Emergency Price Control Act of 1942.[1] The cases were consolidated and tried by jury. Each alleged sale was of a 50-pound sack of onions, on which the ceiling price was $3.03. It was claimed by the prosecution that appellant sold one sack to an investigator of the Office of Price Administration for $6.50 and two weeks later sold a second sack to an employee of a private mercantile company for $6.

In each instance the individual alleged to have made the purchase testified that he was driven with an investigator of the Office of Price Administration to a point near where defendant was selling onions from a parked truck, and that the automobile in which they arrived was parked where it could not be seen from defendant's truck. The intended purchaser was then searched by the investigator who accompanied him. In the first case all money was removed by the investigator and the witness given a $10 bill; in the second case the witness was permitted to retain $7 of the money found in his possession.

Each witness testified that he then proceeded to defendant's truck, purchased a 50-pound sack of onions from defendant, and was charged and paid $6.50 and $6 respectively. Each returned with the onions to the automobile where each was again searched by the investigator and found to have only the moneys remaining from purchases in the amounts so stated. The investigators who accompanied these witnesses also testified to the several searches and their results.

Defendant denied all knowledge of the first sale, and denied that he had made any sale in excess of the price ceiling. The witness involved in the second sale produced a sales slip on which the price stated was $3.03, and testified that defendant had said to him that this was the ceiling price but he had to get more; that he (defendant) had been charging $6.50 but as it was late in the day he would take $6. Defendant admitted that this sale was made and identified the sales slip as his, but testified that he had received only the amount stated on the slip.

■ The sack involved in this second sale was produced and identified by an investigator of the Office of Price Administration who stated that it had been received by him from the witness who made the purchase. Objection was made to its introduction upon the ground that it had not been properly identified as one used by defendant and the overruling of this objection is assigned as error. The only purpose of the offer was to prove that this sale was made by defendant, an essential element of the prosecution's case in chief. When defendant admitted the sale of these onions and identified as his the sales slip given to the purchaser, any question as to the particular sack containing the onions became moot.

Defendant objected to all evidence of the searches of the witnesses delegated to make the respective purchases and of the results of such searches, and the overruling of these objections is urged as ground for reversal. Because this evidence was circumstantial, because its obvious purpose was to corroborate the direct evidence of the witnesses who made the purchases as to the amounts paid by them, and because it was of res inter alios acta, defendant claims that the evidence was improperly received.

■ The rule which excludes evidence of acts and transactions occurring out of the presence of an accused has no application to collateral facts which tend to furnish reasonable grounds or support for a belief in the existence or nonexistence of an ultimate fact, the ascertainment of which is a material issue.

When evidence was admitted of the marking of money later used by one of the witnesses in the purchase of intoxicants, in Jones v. State, 95 Tex.Cr.R. 574, 255 S.W. 419, 421, the court said: "We do not understand the rule to be that no evidence can be introduced against one on trial, except of matters and things that transpire in his presence. Such acts of preparation connected with and explanatory of the case, even though transpiring out of the presence of the defendant, are material and admissible."

In Brooke v. Winters, 39 Md. 505, 508, it was said: "The rule that excludes facts because they are collateral, does not apply to facts wherever existing, if they may afford any reasonable presumption as to the matter in dispute."

■ Many examples found in decided cases furnish illustrations of the admission of evidence of this nature. It may be

shown that shortly before his murder deceased had been paid a sum of money in certain denominations,[2] that an unsuccessful search was made for a revolver at places where the accused could have disposed of it,[3] that jars containing intoxicating liquor were later found concealed in the waters of a creek near where accused had been seen.[4] The admissibility of such evidence does not depend upon the absence of direct testimony, but it may, as here, be offered to corroborate the evidence of a witness. "Circumstantial evidence is always admissible, whether there are eyewitnesses or not." [5]

■■ We hold that the evidence offered was admissible if relevant. Whether it was relevant in that it tended to corroborate the evidence of the two witnesses as to the prices paid by them was largely for the trial court to decide. Its ruling may not be reviewed unless the evidence was so lacking in probative value that its admission might only serve to mislead the jury.[6] "Relevancy" as it relates to "admissibility", is broadly defined. "One fact is relevant to another fact when, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other certain or more probable." [7] In Interstate Commerce Commission v. Baird, 194 U.S. 25, 24 S.Ct. 563, 569, 48 L.Ed. 860, the Supreme Court said: "Relevancy does not depend upon the conclusiveness of the testimony offered, but upon its legitimate tendency to establish a controverted fact." And in Holmes v. Goldsmith, 147 U.S. 150, 13 S.Ct. 288, 292, 37 L.Ed. 118, the court quoted with approval an early Pennsylvania case:[8] "The competency of a collateral fact to be used as the basis of legitimate argument is not to be determined by the conclusiveness of the inferences it may afford in reference to the litigated fact. It is enough if these may tend, even in a slight degree, to elucidate the inquiry, or to assist, though remotely, to a determination probably founded in truth." It then said: "The modern tendency, both of legislation and of the decision of courts, is to give as wide a scope as possible to the investigation of facts. Courts of error are especially unwilling to reverse cases because unimportant and possibly irrelevant testimony may have crept in, unless there is reason to think that practical injustice has been thereby caused."

■ Measured by this rule, evidence of the searches of these witnesses was properly admitted. Conceding that while unobserved each may have successfully concealed or disposed of the difference between the ceiling price of $3.03 and the sums of $6.50 and $6 which respectively they testified was expended for the onions, we think that the presence of opportunity, the possibility of a motive to injure defendant or to convert moneys to their own use, the sufficiency of the searches upon their return, were all matters bearing upon the weight of the evidence, but not affecting its relevancy. The probability that they acted in good faith is at least equal if not greater in probative value to a supposition that they were dishonest.[9]

Other error has been assigned which we have considered and find to be without merit.

Affirmed.

---

[2] Commonwealth v. Williams, 171 Mass. 461, 50 N.E. 1035; Commonwealth v. O'Neil, 169 Mass. 394, 48 N.E. 134; State v. Gallivan, 75 Conn. 326, 53 A. 731, 96 Am.St.Rep. 203.

[3] Burton v. State, 115 Ala. 1, 22 So. 585.

[4] Kelly v. State, 102 Tex.Cr.R. 395, 278 S.W. 449.

[5] Commonwealth v. Karamarkovic, 218 Pa. 405, 67 A. 650, 651. See also 20 Am.Jur. "Evidence", Sec. 273.

[6] State v. Upson, 162 Minn. 9, 201 N. W. 913.

[7] State v. Blake, 69 Conn. 64, 36 A. 1019, 1022. See also 1 Wharton, Criminal Evidence, 11th Ed., Sec. 369.

[8] Stevenson v. Stewart, 11 Pa. 307, 308.

[9] In Professor Wigmore's analysis of the probative effect of circumstantial evidence as determinative of admissibility he reaches the conclusion that "the evidentiary fact will be considered when, and only when, the desired conclusion based upon it is a more probable or natural, or at least a probable or natural, hypothesis, and when the other hypotheses or explanations of the fact, if any, are either less probable or natural, or at least not exceedingly more probable or natural." 1 Wigmore, Evidence, 3d Ed., § 32.